## Martin B. Perkins v. Michael Dacon.

*Sale of personal property — delivery.* — The defendant shipped wheat from Hudson to Toledo, consigning part of it to H. & Co., and part to F. On its arrival at Toledo the wheat was mingled with other like grain in the railroad elevator. The receipts given for the wheat made it deliverable to the consignees or order. Defendant made a formal sale of the wheat to plaintiff, and received payment for the same, and gave him an order on F. for its delivery. Before plaintiff found F., or obtained delivery of the wheat, it was destroyed by the burning of the elevator, and plaintiff sued for the non-delivery ; — *Held*, that these facts did not amount to a sale of the wheat, inasmuch as the legal title thereto was not in the defendant, but in F., through whose co-operation alone it could have been vested in the plaintiff.

*Held, also*, that said order of defendant on F. was an undertaking on his part that F. would complete the sale by delivering the wheat, and that defendant was liable for breach of that undertaking.

*Heard July 13, 1864.    Decided January 28.*

Error to Lenawee Circuit.

In the fall of 1862 the defendant, Dacon, was the owner of a quantity of wheat in store at the warehouse of the Michigan Southern and Northern Indiana Railroad Company, at Hudson station, and for which he held the receipts of the Railroad Company, in the following form:

"No. 38.          NOT TRANSFERABLE.
"*Michigan Southern & Northern Indiana R. R. Co.,*.
                    *Hudson Station, Nov. 8, 1862.*
"Received, under the conditions and stipulations of this receipt, for account of M. Dacon, 2105 pounds red wheat to be forwarded to ——. And the duty and liability of this Company, as a common carrier, shall be

ended on the arrival of the said grain in cars, at the station to which it is consigned, which shall be accepted by the consignee, as a delivery thereof, without notice; and after such arrival, the only liability of said Company for said grain shall be that of a warehouseman. *No transfer of this grain will be made, except at the station to which it is destined, and then only on the written order of the consignee;* and all claims for shortage must be made within thirty days from delivery to the consignee or other carrier, or shall be deemed waived. This Company shall not be held liable for any delay in the transportation, or delivery of said grain, or for any injury from heat or dampness, or for any deterioration in quality, or loss by fire, or accident, or shrinkage, while in the possession of the Company.

"J. H. GALUSHA, *Agent.*"

The wheat was shipped by Dacon to Toledo, and a part of it consigned to P. T. Hamm & Co., and a part to B. Fitts.

On the arrival of the wheat consigned to Hamm & Co., they paid to the Railroad Company the charges for transportation, and took receipts for the grain in the following form:

"A.                                            A.

"*Michigan Southern & Northern Ind. R. R. Elevator,*

"No. 814.                    *Toledo, November,* 12, 1862.

"Received in store from ———, three hundred and sixty-seven $\frac{30}{60}$ bushels red wheat, *subject to the order hereon of Hamm & Co.,* on payment of storage after ten days. Loss by fire and heating at owner's risk. 367$\frac{30}{60}$ bushels red wheat.

"No. of notice, 655.        JAS. S. DICKINSON, *Agent.*"

On the arrival of the wheat consigned to Fitts, notice was given him of such arrival, and that receipts for the

wheat would be given him on payment of the charges. He never paid the charges, and no receipt was ever given him for the grain, but it was placed in store in the Company's grain warehouse at · Toledo, under the consignment to him.

It appeared that grain, when received in the warehouses of the Railroad Company, was mingled with grain of similar grades belonging to other parties, and that deliveries were made from the warehouse at Toledo upon the ' order of the grain clerk, made on the return of . the receipts before mentioned, and that on the giving of the order, these receipts were taken up.

On the 17th of November, 1862, Hamm & Co. advised Dacon by letter, that they had received notice from the Railroad Company, of the consignment .to them of two cars of red wheat from him, and asking advice as to the disposition he wished made of it.

To this letter Dacon replied, under date of the 18th of November, requesting them to transfer ' the wheat to B. Fitts, as the railroad agent had shipped it to them by mistake.

This letter was sent to Fitts and by him presented to Hamm & Co., with a request that they would deliver him the wheat. Hamm & Co. replied, that they had no receipts from the Railroad Company, which would accommodate the amount of wheat due Dacon, but they had receipts for a larger amount, which they would get split and hold for him, (Fitts.) To this, Fitts gave his assent. He called again a short time afterwards, and the receipts not then being ready, he went away, and said it would make no difference, as he was instructed to hold the wheat.

On the 10th of February, 1863, · Dacon, at Hudson, bargained the wheat to Perkins for $1,514.70. He said the wheat was in the hands of Fitts, at Toledo, and gave an order on him for it, as follows:

"*B. Fitts, Esq., Toledo, Ohio:*

"Please deliver to Gillett & Niles, or order, eight hundred and fifty-two and $\frac{23}{60}$ bushels red wheat, and two hundred and ninety $\frac{26}{60}$ bushels white wheat, subject to charges, and place the same to my account.

"M. DACON.

"*February* 10, 1863."

The order was given in favor of Gillett & Niles, because they were to act as the agents of Perkins in obtaining the delivery of, and in managing the wheat.

At the same time, Dacon delivered to Perkins the Hudson warehouse receipts. He had, however, no wheat in that warehouse at the time.

Upon the delivery of the order on Fitts to Gillett & Niles, Perkins paid Dacon for the wheat.

Gillett & Niles, by endorsement on said order, directed the delivery of the wheat to be made to Messrs. Hopkins & Griffith, or order.

This order was received by Hopkins & Griffith, by due course of mail, on or before the 13th of February, and on search being made for Fitts in Toledo, it was ascertained that he was absent in New York. He had no place of business in Toledo, but on inquiry it was ascertained that one Thomas B. Smith was acting for him in some matters. On application to him he was unable to give any information in reference to this business, but said he would write Fitts in New York.

On the 15th of February Hamm & Co. went to the office of the Railroad Company and got their receipts split so as to have them in the amount necessary to make the delivery to Fitts upon the order of Dacon, but not being able to find Fitts, they were not delivered over to him.

The elevator, in which the wheat was stored, was burned, with its contents, on the 25th of February.

Fitts was in New York City all the time, from the 10th of February until after the fire. On the 10th, the books of the Railroad Company showed, that Fitts had in store with the Company at Toledo, only the amount of wheat originally shipped to him by Dacon, being $290\frac{26}{30}$ bushels white and $101\frac{3}{60}$ red.

The wheat was never in fact delivered to Perkins or any one for him.

The action was brought to recover damages for the non-delivery of the wheat by Dacon in accordance with his contract.

The Circuit Judge charged the jury, that the facts proven on the part of the plaintiff, were not sufficient to entitle him to a verdict, and that the giving of said order on Fitts, was a delivery of said wheat, and the title vested in the plaintiff.

To this charge, plaintiff's counsel excepted, and the jury having found a verdict for defendant, plaintiff brought error.

*A. Howell* and *M. R. Waite*, for plaintiff in error:

A delivery which will operate to complete a sale, must, unless there is an agreement to the contrary, place the property sold within the absolute power of the vendee, leaving nothing to be done by the vendor or his agents before the vendee can have actual possession. — *Pratt v. Parkman*, 24 *Pick.*, 42; *Hatch v. Bayley*, 12 *Cush.*, 29; *Carter v. Toussaint*, 7 *E. C. L.*, 282; 5 *Barn & Ald.*, 855; *Story on Sales*, Sec. 311; *Boynton v. Veazie*, 24 *Maine*, 288.

A delivery of property in the possession of a third party, where there is no outstanding documentary evidence of title recognized in law, or by custom, as assignable, so as to carry with it the property itself, is only complete so as to relieve a seller from his obligation to deliver, when the party, having the actual possession has, in some form, acknowledged the title and authority of the vendee.

A mere delivery order, not accepted by the bailee, will not relieve the seller from his obligation. The bailee must either make actual delivery, or, in some form, agree to hold for the purchaser.—*Farina v. Home*, 16 *M. & W.*, 122; *Whitehouse v. Frost*, 12 *East.*, 612; 2 *Pars., Cont.* 644, *note; Addison on Cont.*, 63; *Potter v. Washburn*, 13 *Vt.*, 564; 2 *Story, Cont.* 317, *Sec.* 810, *a.*

The order on Fitts could not operate to discharge Dacon from his obligation to deliver, unless it was accepted by Perkins as such. Whether it was so accepted or not, is a question of fact dependant upon the acts and intentions of the parties, and to be determined by the jury.—1 *Pars. on · Cont.*, 441; *DeRidder v. McKnight*, 13 *John.*, 295; *Gardner v. Gorham*, 1 *Doug.*, (*Mich.*), 507; *Brenner v. Herr*, 8 *Penn. St.*, 106; *Porter v. Talcott*, 1 *Cow.*, 383; *Hart v. Boller*, 15 *S. & R.*, 163; *Hatch v. Bayley*, 12 *Cush.*, 29.

To constitute a symbolic delivery, sufficient to pass the title, the delivery must be of the usual evidence of title to goods in the situation of those sold. — *Story on Sales, Sec.* 311; *Pratt v. Parkman*, 24 *Pick.*, 47.

*T. M. Cooley*, for defendant in error:

*Delivery* of property sold was not necessary at the common law. Where an agreement had been come to by the parties, the price agreed upon, and the article designated, the title passed, subject only to a right in the seller to treat the contract as abandoned, if the purchaser did not receive the property, and pay for it within a reasonable time.—2 *Bl. Com.*, 448; 2 *Kent*, 492, *note; Chit. on Cont.*, 10 *Am. Ed.*, 394; *Bateman's Commercial Law*, § 183; *Hinde v. Whitehouse*, 7 *East*, 571; *Willis v. Willis*, 6 *Dana*, 49.

The common law rule has, however, been changed by the Statute of Frauds, which requires either: 1. That there shall be *delivery and acceptance* of the thing sold,

or some part thereof; or, 2. That the *purchase price*, or something by way of earnest, shall be paid. — *Comp. L.*, § 3184.

. The giving of a written order, by the seller to the buyer, directing the person in possession to deliver over the goods sold, is a sufficient delivery. — *Plymouth Bank v. Bank of Norfolk*, 10 *Pick.*, 459; *Hollingsworth v. Napier*, 3 *Caines*, 186; *Pleasants v. Pendleton*, 6 *Rand.*, 473; *Lansing v. Turner*, 2 *Johns.*, 13; *McCandlish v. Newman*, 22 *Penn.*, 460; *Tarling v. Baxter*, 6 *B. & C.*, 360; *Alexander v. Gardner*, 1 *Bing. N. C.*, 671; *Thompson v. Gould*, 20· *Pick.*, 134–9; *Wing v. Clark*, 24 *Maine*, 366; *Willis v. Willis*, 6 *Dana*, 48; *Means v. Williamson*, 37 *Maine*, 556.; *Heine v. Anderson*, 2 *Duer*, 318; *Hooban v. Bidwell*, 16 *Ohio*, 509; *Olyphant v. Baker*, 5 *Denio*, 379; *Hutchins v. Gilchrist*, 23 *Vt.*, 88; *Birge v. Edgarton*, 28 *Vt.*, 291; *Webber v. Davis*, 44 *Maine*, 147; *Mitchell v. McLean*, 7 *Florida*, 329; *Horr v. Barker*, 8 *Cal.*, 603; *Kimberly v. Patchin*, 19 *N. Y.*, 330; *Horr v. Barker*, 11 *Cal.*, 393; *Hatch v. Bayley*, 12 *Cush.*, 29; *Hatch v. Lincoln*, 12 *Cush.*, 31.

· If defendant had actually agreed to deliver the wheat, the risk of its accidental destruction would have rested upon the plaintiff, and defendant could not be made liable therefor. — *Terry v. Wheeler*, 25 *N. Y.*, 520; *Broyles v. Lowrey*, 2 *Sneed*, 22; *Heine v. Anderson*, 2 *Duer*, 318.

Now, assuming that defendant was bound to deliver, when was there a breach of his contract? If, when plaintiff had sought for, and failed to find Fitts, then defendant was entitled to a return of the evidences of title. But if not until the burning of the wheat, then its destruction excuses performance. — *Terry v. Wheeler*, 25 *N. Y.*, 520.

MARTIN Ch. J.:

In reviewing a case on exceptions, says Ch. J. Shaw,

(4 *Gray*, 137,) it is necessary for this Court to consider precisely what the exceptions are, and not go at large into the evidence reported. Such evidence is reported, not as a statement of the facts to enable this Court to decide on the merits, but only for the purpose of showing how the instructions refused, or given, apply to the case, and whether they were correctly given, or withheld, in point of law.

Adopting this correct rule, let us see what is the evidence reported in this bill of exceptions, by which the instructions given, and refused, by the Judge below, are to be tested. Without entering into details, (which will be found in the reporter's statement of the case,) it will be sufficient to state, that the substantial facts shown are, that Dacon was, on the 10th of February, 1863, the owner of a quantity of wheat, which he had caused to be shipped and forwarded, by the Michigan Southern and Northern Indiana Railroad, to Toledo, and to be deposited in the company's grain elevator, a part subject to the order of Hamm & Co., and a part to that of B. Fitts; that the consignment to Hamm & Co. occurred through a mistake of the company, the intention and instruction of Dacon being that all should be consigned to Fitts; that upon ascertaining that a part was subject to the order of Hamm & Co., Dacon directed its transfer by them to Fitts; that the wheat had been received into the elevator, upon the terms and conditions that it should be only delivered out, upon the written order of the consignee; that Fitts never obtained an order from Hamm & Co. for the portion of wheat consigned to them, nor paid the charges for transportation or elevating, nor accepted the consignment, as required by the shipping contract, for that consigned to himself; and was subsequently never actually, or constructively, the possessor of any of the wheat, or holding any relation to the company, respecting this property, which

could authorize any order by him concerning it, or any control over it; that Dacon, on said 10th day of February, 1863, sold said wheat, in the elevator, at Toledo, to Perkins, and received full payment therefor, and gave to Perkins, a written order upon Fitts for the delivery thereof; that such order was drawn in favor of Gillett and Niles, so that they might obtain delivery of the wheat, and they accepted it, only upon the understanding, that the wheat should be placed under the dominion of their Toledo correspondents, Hopkins and Griffith — refusing to have anything to do with it while remaining under the control of Fitts; that, accordingly, the order of Dacon was endorsed by them to Hopkins and Griffith, and forwarded immediately, that they might obtain a delivery of the wheat, they to act only as agents to obtain its delivery, and hold it under the receipt of the company, subject to the order of Gillett and Niles; upon this order, Hopkins and Griffith endeavored to obtain from Fitts the necessary and actual delivery of the wheat, but unsuccessfully; that Dacon was promptly informed of such want of success, and undertook a delivery, going himself to Toledo for that purpose, but failed. Subsequently the wheat was burned.

The receipt of the company to Dacon, upon the shipment of the wheat, expressly provided that no transfer of the wheat would be made, except at the station to which it was consigned, and then only upon the written order of his consignee. That, according to the custom of the company, wheat deposited in its elevator, was, (unless special directions to the contrary are given,) mingled in a common mass with wheat of like kind and quality, and that the delivery, upon orders, was not of the specific grain elevated, but of a corresponding amount from such general mass of like quality and kind, and this custom appears to have been known and recognized by both Dacon and Perkins in this transaction, so that a transfer.

13 MICH. — G.

of the warehouse receipt to Perkins, would have been a full compliance with any promise to deliver, made by Dacon to him, and especially of the order upon Fitts.

This action is for the non-delivery of the wheat, which, it is evident, was bargained and sold, but which, Perkins contends, was also promised to be delivered, and that, as the loss occurred to him from its non-delivery, and without fault upon his part, he is entitled to recover the amount of his actual loss, as upon a non-executed contract.

The first question suggested by the bill of exceptions is, whether the delivery of the order upon Fitts was a delivery of the wheat by operation of law, or a question of fact for the consideration and determination of the jury. It is perfectly obvious that the parties did not contemplate an actual manual delivery of the identical wheat which was the subject of sale; for the wheat, after having been mixed with other in a common mass in the elevator, could not be thus delivered. The question of a delivery, then, depended upon the power of Fitts to give an order upon the railroad company, under which the latter could recognize Perkins as the owner of the wheat, and be enabled to respond to his orders or directions respecting it. The delivery of such an order, by a competent party, would be constructive or symbolical delivery, and as available as manual delivery, unless a contrary intention of the parties was proven. But Fitts is shown to have been in no situation, so that he could make delivery of any kind, when the order upon him was given to Perkins, and up to the time of the destruction of the wheat. Could the order upon him, then, by construction of law, have conveyed any constructive or actual possession of, or dominion over, the wheat? Had the wheat been held by the railroad company, subject to the order of Dacon himself, and an order been given by himself directly to the company,

quite a different question would be presented from that presented to us by this case. In such case, Dacon's order upon the company would, in the absence of proof of any special agreement respecting the delivery of the wheat, and with proof of payment for it, be construed in law as a symbolical and full delivery, and the risk of loss by fire, or other cause, would attend upon the title. — See *Terry v. Wheeler*, 25 *N. Y.*, 520. Such, I think, is the rule of law, in every case of bargain and sale without delivery, or a special promise to deliver, and no payment down made, but time given, as between the immediate parties to the contract, (however otherwise as to creditors, or other third parties,) — (See *Pratt v. Parkman*, 24 *Pick.*, 42) — and I think it to be sound law that no particular form for the sale of personal property is required, and that all that is necessary, (as respects the immediate parties,) is that such parties should *intend* — the one to part with his property, and the other to become its owner, and that this union of intention constitutes a contract of sale. This question of intention, if to be gathered from a construction of a written instrument solely, is a pure question of law; if otherwise, a mixed question of law and fact, (See 2 *Parsons on Contracts*, 4th *Ed.*, 322,) and the true rule is that, as between buyer and seller, a formal delivery is not necessary; but as to other parties, there must be not only an agreement to sell, but a delivery of the thing sold; but when an actual transmission of the thing itself, by the seller to the buyer, is impossible, constructive or symbolical delivery, producing, as far as practicable, the same effect, is allowed. — *Id;* see, also, *Phelps v. Cutler*, 4 *Gray*, 137. Thus, in *Atwell v. Miller*, 6 *Maryland*, 10, it was held that, while delivery is a fact to be found by a jury, (which, I think, is not true when solely dependent upon the construction of a written instrument, but true otherwise,) *constructive delivery*

is a mixed question of law and fact, and the circumstances, or facts, necessary to constitute such delivery, must be found by the jury, as in case of actual delivery; and either party has the right to ask instructions of the Court as to the *legal effect* of any particular circumstance which may be offered to the jury, and from which delivery is to be deduced. — See, also, *Artcher v. Zeh*, 5 *Hill*, 205. In *Artcher v. Zeh*, it is held that, in questions of actual, as well as constructive or symbolical delivery, the acts of the parties must be of such a character as unequivocally to place the property within the power, and under the exclusive dominion, of the buyer, and that this is the doctrine of those cases which have carried the principle of constructive delivery to the utmost limit. — See, also, *Atwell v. Miller*, *supra*. And in speaking of the application of the Statute of Frauds to contracts of sale, Prof. Parsons, (2 *Parsons on Contracts*, 324,) says that mere delivery, by the buyer, of the seller's order on a bailee does not serve to satisfy the statute, without some act of possession and acceptance of the property by the buyer, or the assent of the bailee to hold it for the buyer.

Now to apply these principles — which I think to be correct — to the case at bar. Dacon sold the wheat to Perkins, and received his pay therefor. He gave an order upon Fitts, who was his consignee, through whose order alone, upon the railroad company, the wheat could be procured by Perkins. But Fitts had never paid the shipping charges, or taken any warehouse receipts, for the wheat directly consigned to him, nor obtained a transfer of the wheat subject to the order of Hamm & Co., nor done any act by which the company could be called upon to recognize him as Dacon's consignee, or bailee, of the wheat. Fitts was not to be found so that the order could be presented to him, and, if he had been found, he could not have made prompt,

delivery, either actual or constructive. Now it is a sound rule of law that, if the seller does what is usual, or what the nature of the case makes convenient and proper, to pass the effectual control of the goods from himself to the buyer, this is always a delivery, and nothing less than this is such. — 2 *Parsons on Contracts*, 324−5. Was this done in the case before us? Clearly not; for the order was upon a person having, at the time, neither actual nor constructive dominion over the property. But the Circuit Judge instructed the jury that it had been done, in his charge, that the order on Fitts by Dacon was a delivery of said wheat to said Perkins, and that the sale thereof was complete. This question of delivery, which is aside from that of sale in this case, should have been left to the jury as one of fact, under instructions from the Judge that the delivery of the order upon Fitts was, under the circumstances, no delivery, unless it should be found, from further evidence, or attendant circumstances, that the intention of both buyer and seller was that it should be such — that of the seller to part with the wheat, and that of the buyer to accept it, through the order holding Fitts as his bailee, from its delivery, and until it' could be transferred, according to the exigency of such order.

No legal effect could be attached to this order, countervailing the obvious intention of the parties. Upon this question there was pertinent and relevant testimony, which the jury should have had submitted to them, and which might, and would, probably, have satisfied them that the order upon Fitts was not one which would give Perkins any dominion over the property, consistent with the rights and obligations of the railroad company. The company was only obligated to deliver upon the order of Dacon's assignee. Dacon was the actual owner of the wheat, but had parted with

dominion over it, and had, by the terms of his ship-
ment agreement, consented to such arrangement. He
could, therefore, make no order upon the company,
respecting this wheat, which it would be bound to
execute. The order was made, accordingly, upon Fitts,
a middle man, who, as is shown, could not execute it.
Thus the whole question was one for the jury, under
proper instructions from the Court, but could not be
taken away from them. It appears to me that Fitts
can, in no sense, be considered as the bailee of the
wheat, under any view which may be taken of the
effect of Dacon's order, considering his neglect to obtain
the usual and requisite evidence of control of the prop-
erty, under which alone the railroad company could
recognize him; and if the order was upon one who
could not make delivery, it could not, of course, be
any symbolical or constructive delivery. The fact, also,
that the order was given to Gillett and Niles for the
purpose of obtaining delivery, together with Dacon's sub-
sequent acts, were evidence which should have gone to
the jury for consideration, to ascertain whether any
agreement to deliver was made and performed. The
Circuit Judge seems to have first laid down a control-
ling rule for the guidance of the jury, viz.: That there
was an actual, absolute delivery of the wheat to Per-
kins, by the delivery of the order upon Fitts. This
must have controlled their whole deliberation and con-
sideration of the case. It is true that, afterwards, the
Judge left the question of the delivery to the jury, to
some extent, but yet, as it appears to my mind, from
considering the bill of exceptions, with the controlling
proposition above noticed prominently before them, as
the law of this case, and in the light of which all
collateral evidence should be weighed by them. From
the result of the trial, and the evidence set out in the
bill of exceptions, it would seem to have taken full

effect, and to have misled the jury throughout their deliberations. In such case, the judgment cannot be sustained. — See *The People v. Scott*, 6 *Mich.*, 297. This view disposes of the whole case, as all the charges of the Judge, excepted to, hinge upon this proposition.

Judgment is reversed, and a new trial ordered.

CAMPBELL J.:

Perkins sued Dacon for the non-delivery of wheat. Dacon had sent forward wheat to Toledo — a part to Hamm & Co., and a part to B. Fitts — and the receipts made it deliverable only to them, or their order. Hamm & Co. were directed to transfer the wheat under their control, to Fitts. The wheat was all mingled, in bulk, with other wheat of like quality, in the railroad elevator. Hamm & Co. had warehouse receipts, including their consignment in a mass with other wheat. The testimony tended to show, that they had never transferred the wheat to Fitts. Dacon sold the wheat to plaintiff, and gave him an order on Fitts for delivery. He also gave him the way-bills, which made it deliverable to Hamm & Co. and to Fitts. Fitts was not in Toledo; and plaintiff introduced testimony tending to prove, that he made diligent efforts to obtain the wheat, but was unable, by reason of Fitts's absence, to do so. The elevator was burned up, and the wheat, with a large quantity belonging to other parties, was burned also. Plaintiff thereupon sued Dacon, because he was not able to obtain the wheat on his order. The condition of the wheat, as to control and ownership, has a very important bearing upon the legal questions raised upon the trial, and requires to be carefully considered. At the time of the bargain between plaintiff and defendant, the wheat itself was in the actual possession of the railroad company, and mixed with the common mass held in store. A portion of it was held under receipts to Hamm & Co.,

and a portion subject to the order of Fitts. As between Dacon and these Toledo factors, the ownership was equitably in Dacon, and he had a right to direct what disposition should be made of the wheat. But if those persons should refuse to obey his instructions, he had no means of protecting his interest in the property itself. He could not recover it from the elevator, and he could not reach or' control the muniments of title, which, by his own action, had been vested in them, and not in himself. While he had an interest as owner, which justified his undertaking to dispose of the property, he had, nevertheless, no means, or right, of reaching it, except through the actual co-operation of the persons to whom he had transferred its control. A sale, under such circumstances, which should excuse Dacon, should his vendee fail to obtain the wheat from the Toledo agents, would be, not a sale of wheat, but a sale of a right of action against the agents. The testimony and the charges go upon the hypothesis, that it was the wheat itself which was purchased and sold; and we are therefore, confined to that view, which is not disputed, and which is maintained by the defendant's own statement in the cause. And the questions for our determination depend on the character of the transaction, as a complete, or incomplete, sale.

· That delivery is not always necessary to make a sale perfect, is very well settled. But there must always be an identification of the thing sold, in some way, so that it may stand, as set apart from other things, with which it might be confounded, and there must be a present transfer of the entire ownership. The wheat, in this case, could not be identified in kind, until actually measured out. If we assume, (as, perhaps, there was evidence tending that way,) that a sale would be sufficient, which transferred the right to a specific number of bushels in the elevator, that title could only pass

when the purchaser received a transfer of the title papers, or evidences which would establish the ownership in him, and which the railroad company would be legally bound to recognize. Inasmuch as Fitts had been made, by Dacon, his representative in the premises, and vested with the rights of legal ownership, the title could only be passed to plaintiff through his co-operation. The order which Dacon gave plaintiff, on Fitts, cannot be regarded as an order to deliver that which was already vested in plaintiff. It was necessary to transfer the title itself, that Fitts should act upon it, and pass over the property by his own intervention. Until Fitts should act, the plaintiff could obtain no title whatever. I think the order on Fitts was, therefore, an undertaking, by Dacon, that Fitts would complete the sale, which was, thus far, incomplete, and needed just what the order called for to make it operative, — that is to say, an actual or constructive delivery.

The exceptions are all based upon a different view presented to the jury, or upon a refusal to charge in accordance with this view. The same error pervades them all, and it is not necessary to refer to them in detail. I think the judgment should be reversed, with costs, and a new trial should be granted.

I deem it unnecessary to consider the peculiar nature of the interests owned by depositors of wheat in an elevator. We held, in *Erwin v. Clark*, that there were property rights, which might, however, be subject to some conditions, not applicable to grain kept separate. The necessity of recognizing the title, as vesting in those who have been lawfully placed in control of it, in their own names, arises from the nature of the bailment, and the contract of the bailees, and cannot be denied by parties who have themselves caused the relation to assume that shape. And when such parties

undertake to sell, they are bound to take every step necessary to get the title vested in the purchasers.

CHRISTIANCY J. concurred in this opinion.